IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT NASHVILLE
Assigned on Briefs September 1, 2015 at Jackson

## STATE OF TENNESSEE v. JAMES DICKERSON

**Appeal from the Circuit Court for Montgomery County
No. 41300515    Michael R. Jones, Judge**

___

**No. M2014-02238-CCA-R3-CD – Filed January 7, 2016**

___

The defendant, James Dickerson, appeals his Montgomery County Circuit Court jury convictions of aggravated sexual battery and rape of a child, claiming that the evidence was insufficient to support his convictions and that the trial court erred by admitting certain evidence at trial. Discerning no error, we affirm the judgments of the trial court.

**Tenn. R. App. P. 3; Judgments of the Circuit Court Affirmed**

JAMES CURWOOD WITT, JR., J., delivered the opinion of the court, in which ROGER A. PAGE and TIMOTHY L. EASTER, JJ., joined.

B. Nathan Hunt, Clarksville, Tennessee (on appeal); and Travis Meeks, Clarksville, Tennessee (at trial), for the appellant, James Dickerson.

Herbert H. Slatery III, Attorney General and Reporter; M. Todd Ridley, Assistant Attorney General; John Wesley Carney, Jr., District Attorney General; and Kimberly Lund, Assistant District Attorney General, for the appellee, State of Tennessee.

## OPINION

In May 2013, the Montgomery County Circuit Court grand jury charged the defendant with three counts of rape of a child and one count of aggravated sexual battery. The trial court conducted a jury trial in February 2014.

The State's proof at trial showed that the victim, J.B.,[1] lived in Clarksville with her mother, K.B.,[2] and the victim's two older siblings. K.B.'s father, the defendant, also lived in Clarksville and would often babysit his three grandchildren. The children

___

[1] It is the policy of this court to refer to minors by initials.

[2] To protect the anonymity of the minor victim, we will refer to her mother by her initials as well.

would frequently stay at the defendant's house overnight as well. K.B. testified that when the victim was eight years old, K.B. witnessed her attempt to kiss the defendant "in the mouth," which concerned K.B. Following this incident, K.B. questioned the victim, and as a result of that conversation, K.B. contacted the police.

Detective Desmond Chestnut with the Clarksville Police Department interviewed the defendant in February 2013 following the victim's accusations that the defendant had raped her. A videotape of that interview was admitted into evidence and played for the jury. During the two-hour interview, the defendant repeatedly denied raping or otherwise sexually assaulting the victim but stated that the victim had reported to him that her stepfather and her older brother had both raped her. The defendant stated that he told the victim to report the abuse to her mother, explaining that if he had told K.B., she would not have believed him. The defendant admitted that he never contacted the police to report the alleged abuse and never spoke to K.B. to discover whether the victim had reported the abuse to her. After approximately an hour and a half, the defendant told Detective Chestnut that he had raped the victim, stating that although he was not guilty, he would confess in order to spare the victim the necessity of having to testify at a trial.

Denise Alexander, a forensic social worker with Our Kids Clinic, met with the victim alone in February 2013. The victim told Ms. Alexander that the defendant "put his thing in my thing," gesturing toward her genital area. The victim could not recall the most recent occasion on which this occurred, but she told Ms. Alexander that the first incident took place when she was in the second grade. When questioned about the parts of her body that the defendant had touched, the victim responded that the defendant's "thing went in my thing; she described that he put his fingers in her private parts; he put his tongue in my thing, and that's a quote; and that he sucked on my breasts." The victim reported that "when [the defendant] put his finger in her thing it hurt to pee for a few days afterwards," and she stated that the defendant had instructed her not to tell anyone about the things he had done.

Caroline Patterson, a nurse practitioner with Our Kids Clinic, testified as an expert witness for the State. Ms. Patterson stated that she performed a physical examination of the victim following the victim's interview with Ms. Alexander and that the examination revealed no abnormalities. Ms. Patterson explained that only five percent of children examined at Our Kids Clinic had abnormal examinations with some evidence of injury.

The victim, who was nine years old at the time of trial, testified that "the bad things" began happening when she was seven years old. On one occasion when the victim was visiting the defendant's house, the defendant instructed her to come into his

- 2 -

bedroom. He closed the door, removed his clothing, and told the victim to remove her clothing. The defendant then told the victim to lie down on the bed on her back, and the defendant "stuck his finger in [her] vajayjay" while the defendant knelt on the side of the bed. The victim said it was "[h]urtful" and that she told him to stop, but the defendant did not stop. The defendant then instructed the victim not to tell anyone what had happened.

On that same occasion, the defendant "stuck his D word in my vajayjay." The victim indicated that the "D word" referred to the defendant's penis. When asked how this action made her feel, the victim testified that it was also "[h]urtful." The victim asked the defendant to stop, and the defendant complied. He then proceeded to "put medicine on [the victim] so [her] mom wouldn't smell anything on [her]." The victim explained that the defendant "used two fingers and he rubbed it on . . . [m]y vajayjay."

On a separate occasion, the defendant told the victim to remove her shirt and lie down on his bed. The defendant then lay down on the bed next to the victim and kissed her bare chest.

On yet another occasion, the defendant called the victim into his bedroom and told her to remove her pants while he removed his shirt. The defendant then "licked [the victim's] vajayjay" by "sticking his tongue in [her] vajayjay, in and out." After repeatedly asking the defendant to stop, the defendant eventually stopped and told the victim "to put [her] pants back on."

With this evidence, the State rested. Doctor Peter Silkowski, a family physician, testified for the defense that the defendant had been diagnosed with prostate cancer in late 2006 or early 2007. After undergoing treatment, the defendant complained of erectile dysfunction in March 2008. Doctor Silkowski noted that the defendant "tried all of the medicines on the market at that time and none of them worked." In June 2011, the defendant saw Doctor Silkowski again and was still experiencing erectile dysfunction. On cross-examination, Doctor Silkowski opined that men suffering from erectile dysfunction are capable of experiencing an erection but that it "goes away very, very quickly." Doctor Silkowski testified that he could not "imagine a flaccid penis would make penetration . . . to an adult woman in a sex act."

The defendant testified and categorically denied raping the victim. He explained that he had confessed to Detective Chestnut because he was intimidated and because he "didn't want [his] granddaughter to be on the stand" at trial. The defendant confirmed that he had been diagnosed with cancer in 2006 or 2007 and that the chemotherapy he had endured had caused erectile dysfunction. On cross-examination, the defendant admitted that he had once applied "Neosporin and Vaseline" to the victim's

inner thigh to treat a rash when the victim was "[s]ix-and-a-half [or] seven." The defendant also conceded that his former wife had accused him of rolling on top of her and engaging in sexual intercourse with her while he was still asleep. The defendant acknowledged that the victim had seen his penis "[a]t least three or four times" when she had accidentally walked in on him while he was changing clothes.

Based on this evidence, the jury convicted the defendant as charged of one count of aggravated sexual battery and three counts of rape of a child. Following a sentencing hearing, the trial court merged the child rape convictions involving digital and penile penetration because they arose out of the same event. The court sentenced the defendant as a standard offender to a term of nine years' incarceration for the aggravated sexual battery conviction and 26 years' incarceration for both of the child rape convictions, all to be served at 100 percent by operation of law. The court ordered all the sentences to be served concurrently for a total effective sentence of 26 years.

Following the denial of his timely motion for new trial, the defendant filed a timely notice of appeal. In this appeal, the defendant contends that the evidence is insufficient to support his convictions, that his pretrial confession was coerced, and that the trial court erred by admitting into evidence the victim's statements to the staff at Our Kids Clinic. We will address each issue in turn.

*I. Sufficiency*

The defendant contends that the evidence is insufficient to support his convictions of rape of a child and aggravated sexual battery. We disagree.

We review the defendant's claim of insufficient evidence mindful that our standard of review is whether, after considering the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. Tenn. R. App. P. 13(e); *Jackson v. Virginia*, 443 U.S. 307, 319 (1979); *State v. Winters*, 137 S.W.3d 641, 654 (Tenn. Crim. App. 2003). This standard applies to findings of guilt based upon direct evidence, circumstantial evidence, or a combination of direct and circumstantial evidence. *State v. Dorantes*, 331 S.W.3d 370, 379 (Tenn. 2011).

When examining the sufficiency of the evidence, this court should neither re-weigh the evidence nor substitute its inferences for those drawn by the trier of fact. *Id.* Questions concerning the credibility of the witnesses, the weight and value of the evidence, as well as all factual issues raised by the evidence are resolved by the trier of fact. *State v. Cabbage*, 571 S.W.2d 832, 835 (Tenn. 1978). Significantly, this court must afford the State the strongest legitimate view of the evidence contained in the record as

well as all reasonable and legitimate inferences which may be drawn from the evidence. *Id.*

As charged in this case, "[r]ape of a child is the unlawful sexual penetration of a victim by the defendant or the defendant by a victim" if the victim is between the ages of three and 13. T.C.A. § 39-13-522(a). "Sexual penetration" is defined as "sexual intercourse, cunnilingus, fellatio, anal intercourse, or any other intrusion, however slight, of any part of a person's body or of any object into the genital or anal openings of the victim's, the defendant's, or any other person's body, but emission of semen is not required." *Id.* § 39-13-501(7). Aggravated sexual battery "is unlawful sexual contact with a victim by the defendant or the defendant by a victim" when "[t]he victim is less than thirteen (13) years of age." T.C.A. § 39-13-504(a)(4). "Sexual contact" is defined as including "the intentional touching of the victim's, the defendant's, or any other person's intimate parts, or the intentional touching of the clothing covering the immediate area of the victim's, the defendant's, or any other person's intimate parts, if that intentional touching can be reasonably construed as being for the purpose of sexual arousal or gratification." *Id.* § 39-13-501(6). Finally, "'[i]ntimate parts' includes the primary genital area, groin, inner thigh, buttock or breast of a human being." *Id.* § 39-13-501(2).

In the instant case, the proof at trial established that the defendant sexually penetrated the seven-year-old victim's vagina with his penis, his finger, and his tongue and that he kissed the victim's bare chest. The victim's testimony surrounding these events was very detailed and was in line with the description of the abuse the victim provided to Ms. Alexander. Although Ms. Patterson found no evidence of injury during her physical examination of the victim, she testified that such results were typical due, in part, to the elasticity of the vaginal tissue. The defendant, for his part, denied all abuse and testified that he suffered from erectile dysfunction, a claim which was confirmed by his physician. Such matters of witness credibility and evidentiary weight are within the exclusive province of the trier of fact, and this court will not reweigh such evidence. *See Dorantes*, 331 S.W.3d at 379. Moveover, the defendant's erectile dysfunction would have in no way prevented his digital and oral penetration of the victim.

Viewing this evidence in the light most favorable to the prosecution, we find that the evidence adduced at trial more than sufficiently established the defendant's convictions of aggravated sexual battery and rape of a child.

## II. Admission of Defendant's Statement

The defendant contends that his pre-trial statement to law enforcement officers should have been excluded from evidence at trial because his statement was

involuntary. The State responds that the defendant waived plenary review of this issue by failing to seek suppression of the statement prior to trial.

We agree with the State that the defendant waived consideration of this issue by failing to seek pre-trial suppression of the statement. A motion to suppress evidence must be filed before trial. Tenn. R. Crim. P. 12(b)(2)(C) ("The following must be raised before trial: . . . a motion to suppress evidence . . . ."). "Unless the court grants relief for good cause, a party waives any defense, objection, or request by failing to comply with . . . rules requiring such matters to be raised pre-trial." Tenn. R. Crim. P. 12(f)(1). The defendant is not entitled to relief on this issue.

### III. Admission of Victim's Statements to Medical Professionals

Finally, the defendant argues that the trial court erred by admitting into evidence the victim's statements to Ms. Alexander and Ms. Patterson under the hearsay exception for statements made for the purpose of medical diagnosis and treatment. Again, we disagree.

"'Hearsay' is a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted." Tenn. R. Evid. 801(c). "Hearsay is not admissible except as provided by these rules or otherwise by law." *Id.* 802. Tennessee Rules of Evidence 803 and 804 provide exceptions to the general rule of inadmissibility of hearsay.

As our supreme court recently confirmed, "[t]he standard of review for rulings on hearsay evidence has multiple layers." *Kendrick v. State*, 454 S.W.3d 450, 479 (Tenn. 2015), *cert. denied*, No. 14A1098, 2015 WL 5032354 (U.S. Oct. 13, 2015). The "factual and credibility findings" made by the trial court when considering whether a statement is hearsay, "are binding on a reviewing court unless the evidence in the record preponderates against them." *Id.* (citing *State v. Gilley*, 297 S.W.3d 739, 759-61 (Tenn. Crim. App. 2008)). "Once the trial court has made its factual findings, the next questions – whether the facts prove that the statement (1) was hearsay and (2) fits under one the exceptions to the hearsay rule – are questions of law subject to de novo review." *Kendrick*, 454 S.W.3d at 479 (citing *State v. Schiefelbein*, 230 S.W.3d 88, 128 (Tenn. Crim. App. 2007); *Keisling v. Keisling*, 196 S.W.3d 703, 721 (Tenn. Ct. App. 2005)); *see also Gilley*, 297 S.W.3d at 760 (stating that because "[n]o factual issue attends" the trial court's determination whether a statement is hearsay, "it necessarily is a question of law."). "If a statement is hearsay, but does not fit one of the exceptions, it is inadmissible, and the court must exclude the statement. But if a hearsay statement does fit under one of the exceptions, the trial court may not use the hearsay rule to suppress the statement." *Kendrick*, 454 S.W.3d at 479; *see also Gilley*, 297 S.W.3d at 760-61.

Tennessee Rule of Evidence 803(4) provides:

> Statements for Purposes of Medical Diagnosis and Treatment. Statements made for purposes of medical diagnosis and treatment describing medical history; past or present symptoms, pain, or sensations; or the inception or general character of the cause or external source thereof insofar as reasonably pertinent to diagnosis and treatment.

Tenn. R. Evid. 803(4). Our supreme court has held that a minor victim's statements pertaining to the general character, cause, or source of sexual abuse may be admissible provided the trial court first conducts an evidentiary hearing outside the presence of the jury and makes a determination that the statements were "reasonably pertinent to diagnosis and treatment." *State v. Stinnett*, 958 S.W.2d 329, 331 (Tenn. 1997) (citing *State v. McLeod*, 937 S.W.2d 867, 870 (Tenn. 1996)). When the declarant is a child, the trial court "must look to all the circumstances surrounding the statement" to determine admissibility. *Stinnett*, 958 S.W.2d at 331. Such circumstances include "the timing of the statement, the contents of the statement, whether the statement was made in response to suggestive or leading questions, whether the statement was improperly influenced by another, and any other circumstances that may undermine the statement's trustworthiness such as a custody battle or family feud." *State v. Frederick Leon Tucker*, No. M2005-00839-CCA-R3-CD, slip op. at 10 (Tenn. Crim. App., Nashville, Mar. 7, 2006) (citing *McLeod*, 937 S.W.2d at 871; *Stinnett*, 958 S.W.2d at 332).

In the instant case, the trial court conducted a hearing outside the jury's presence during which Ms. Patterson testified about the intake protocol at Our Kids Clinic. Ms. Patterson explained that a social worker meets with the child and obtains both a general medical history and information on the alleged sexual contact. The social worker then meets with the medical provider to review the information gathered from the child, which guides the manner in which the medical provider will examine the child, particularly if a need exists to test for infections. At the conclusion of Ms. Patterson's testimony, the trial court ruled that the statements the victim made to Ms. Alexander and Ms. Patterson were relied on to determine "whether or not there might be some type of infection" which was "for diagnostic purposes." As such, the court held, the statements were admissible as an exception to the hearsay rule for purposes of medical diagnosis and treatment.

In our view, the trial court did not err by admitting the victim's statements under the medical diagnosis and treatment exception. Ms. Patterson, a nurse practitioner, testified that the statements regarding the victim's abuse, which were relayed to her by

forensic social worker Denise Alexander, were a necessary part of Ms. Patterson's diagnosis and treatment of potential infections. Nothing suggests that the victim's statements were made in response to leading questions, were the result of improper influence, or were otherwise made under circumstances indicating untrustworthiness. Although the defendant argues that the victim's statements were made "eight to nine months after the abuse allegedly occurred," thus negating their impact for purposes of medical diagnosis and treatment, this court has previously held that a child's statements regarding sexual abuse made nearly one year following the abuse were properly admitted under Rule 803(4). *See State v. David Wayne Felts*, No. M2013-00939-CCA-R3-CD, slip op. at 8, 15-16 (Tenn. Crim. App., Nashville, July 8, 2014), *perm. app. denied* (Tenn. Nov. 20, 2014). The defendant is not entitled to relief on this issue.

*Conclusion*

For the foregoing reasons, we affirm the judgments of the trial court.

_____
JAMES CURWOOD WITT, JR., JUDGE